## CLANCY v. TROY BELTING & SUPPLY CO.

(Circuit Court of Appeals, Second Circuit. November 7, 1907.)

### No. 95.

**1. PATENTS—LICENSE CONTRACT—CONSTRUCTION.**

An agreement made by the owner of a patent for a hose clamp, in settlement of a suit for infringement, that he would not trouble the defendant so long as it made only brass clamps, the complainant being then making them of steel, must be construed to apply only to clamps covered by the patent; and the making by the defendant of steel clamps of a different kind, not within the patent, was not a violation of the license which would render a user of its brass clamps subject to a suit for infringement.

**2. SAME—JURISDICTION OF SUIT FOR INFRINGEMENT—DEFENSE OF LICENSE.**

Where a suit between citizens of the same state was for infringement of a patent, and was so tried and decided by the Circuit Court, the Circuit Court of Appeals has jurisdiction of an appeal therein, notwithstanding the fact that one of the defenses, upon which the case turns in that court, depends upon the construction of a contract of license.

[Ed. Note.—Jurisdiction of federal courts in suits relating to patents, see note to Bailey v. Mosher, 11 C. C. A. 313.]

Appeal from the Circuit Court of the United States for the Northern District of New York.

For opinion below, see 152 Fed. 188.

Arthur E. Dowell (T. H. Alexander and Melville Church, of counsel), for appellant.

Alfred Wilkinson, for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. We agree with the judge of the Circuit Court that the complainant has established the validity of the patent in suit, his title to it and right to sue, and that the brass clamps sold by the defendant are covered by it, and an infringement, except for a consideration presently to be stated. The complainant, when on the witness stand, testified that he had licensed the H. B. Sherman Manufacturing Company, defendant's vendor, to make and sell the infringing devices, and, though this license was not pleaded by the defendant, both parties discussed the effect of it at the trial and made the case to turn upon it at the argument in this court. Although the allegata and probata do not agree, and there should have been an amendment of the answer setting up this defense, we will, in view of the conduct of the parties, consider the effect of the license as if it had been pleaded.

The only testimony upon the subject is that of the complainant. He had in 1896 filed a bill for infringement of his patent in the Eastern District of Michigan against the H. B. Sherman Manufacturing Company, which suit was subsequently settled by agreement between the parties and discontinued. The complainant testified as follows:

"RDQ 36. Will you state why that suit in the Eastern District of Michigan was dropped, giving the circumstances, and why this suit on the same patent has been brought? A. In 1896 Mr. Redfield and myself commenced a suit for infringement of this patent against the H. B. Sherman Manufacturing

Company, of Battle Creek, Mich. Mr. Harrison Hoyt was our attorney. Mr. Sherman and Mr. Cox came on here to Syracuse to see us, and discussed at some length entering into an agreement. There was an agreement drawn, but upon further consideration we considered it unwise to sign it. Some time after Mr. Sherman called to see me, and as I thought we had made our position pretty clear by bringing suit on this patent, and considered that he, by his position, had recognized the validity of our patent, I wasn't very anxious for litigation or trouble, preferring to get along peaceably with our competitors if we could. I told Mr. Sherman that as long as he confined himself to brass clamps I would not bother him, believing that I could do pretty well on steel, although at this time almost the entire demand was for a brass clamp; but I had a good deal of confidence that steel would win out in time. Sherman agreed to that, but he never gave me a cent, or any other consideration, and I considered that we merely had a gentlemen's understanding. We stuck at the steel clamps, but it was pretty up-hill work for several years; but about 1900 and 1901 we had worked up a very nice business. This was all new business, worked up at a great deal of trouble, labor, and expense, all based on the patent in suit. After we had demonstrated that there was a field for steel clamps, we understood that Mr. Sherman had gone back on his word and was selling a steel clamp. We first heard of this, I think, about 1903. My attorney, Mr. Hoyt, has been dead for several years."

The judge of the Circuit Court construed this testimony as showing a settlement between the parties whereby the complainant agreed to make steel clamps only and the Sherman Manufacturing Company agreed to make brass clamps only. It being shown that the Sherman Company had made and sold steel clamps, though not covered by the complainant's patent, the judge of the Circuit Court held that this company's rights under the license were forfeited, and that it and its vendees were infringers as to all brass clamps covered by the complainant's patent made after it began to make steel clamps of any kind. We cannot so construe the testimony. We think that the parties must have been speaking about the subject of their dispute, viz., the right of the Sherman Company to manufacture clamps covered or claimed to be covered by the complainant's patent. If so, when the complainant agreed not to disturb the Sherman Company so long as it made only brass clamps, he must be understood to have meant brass clamps covered by the patent. It not being pretended that the steel clamp made by the Sherman Company infringes the patent in any way, we think the making of it was no violation of the license.

Although both the parties are citizens of New York, as the action was for the infringement of a patent, and was so tried and decided in the court below, this court has jurisdiction, notwithstanding that one of the defenses depends upon the construction of a contract of license. We do not think that the decision in Hartell v. Tilghman, 99 U. S. 547, 25 L. Ed. 357, applies. The jurisdiction of the Circuit Court was denied in that case because, the parties being citizens of the same state, the cause of action depended solely upon a contract of license.

Inasmuch as the defendant has been defeated on the issues it contested, and escapes upon a defense not pleaded, the case will be reversed, with costs to the complainant in the court below, and no costs to either party in this court.